**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DURACELL U.S. OPERATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 3166 |
| | ) | |
| v. | ) | |
| | ) | |
| JRS VENTURES, INC., *et al*, | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

Duracell commenced this Lanham Act suit against JRS Ventures in the Spring of 2017. [Dkt. #1]. In its interrogatory responses, JRS identified the Milecrest Corporation as the source of the allegedly infringing Duracell grey market batteries. The Milecrest Corp is, according to the plaintiff, solely owned and controlled by Morris Benun. [Dkt. #1; 107 at 2]. It is contended by the plaintiffs that JRS Ventures has produced documents showing it had distributed the accused goods to customers in Illinois. The plaintiffs also contend that JNA Sales, Inc., also known as JNA, Inc., is "another Benun owned/controlled company that is"selling Duracell grey market batteries to BigLots! stores for sale in its numerous retail stores" in Illinois. [Dkt. #106].

The defendants moved to dismiss the case on jurisdictional grounds. [Dkt. #72]. Their motion was supported by a Certification from Mr. Benun, on whom the motion to dismiss relied. [Dkt. #73, 75]. While the defendants have insisted that the statements in Benun's Certification must be accepted as true "unless contradicted by evidence set forth by Duracell," [Dkt. #73 at 8], they have obdurately and inconsistently refused to allow the plaintiffs to depose Mr. Benun. More on this

in a moment. At a hearing on December 13, 2017, the question of depositions was discussed at the December 13th hearing before Judge Gettleman. (Dkt. #88 at 3:3-5). He was told that Duracell wanted to take the Benun deposition regarding the claim that defendant's were not subject to the court's jurisdiction. When counsel for the New Jersey Defendants argued that a deposition was not warranted and sought to prescribe how jurisdictional discovery should proceed, the court emphatically rejected the limitations sought by the defendants, saying: *"I'm not going to tell him that he's not going to need a deposition."* (*Id*. at 4:9-11, 4:14-17)(Emphasis supplied). There followed this Order: "Plaintiff granted leave to take discovery limited to the issues raised in the motions to dismiss by 1/15/2018." [Dkt. #83].

On December 26, Duracell served its jurisdictional document requests on the New Jersey Defendants and requested the parties discuss scheduling Mr. Benun's deposition the week of January 8. On December 29, counsel for the New Jersey Defendants served their responses to the jurisdictional document requests, asserted objections – which the plaintiffs characterize as "meritless" – failed to produce any responsive documents, and indicated that they would not consent to a deposition of Mr. Benun. On December 31, counsel for Duracell responded, attaching the notice of Morris Benun's deposition and inviting a meet-and-confer regarding the New Jersey Defendants' refusal to produce any documents related to the court-ordered jurisdictional discovery.

Judge Gettleman, of course, had the discretion to allow jurisdictional discovery and to prescribe of what it was to consist. *Keehan Tennessee Investments, LLC v. Guardian Capital Advisors, Inc.*, 692 F. App'x 445, 446 (9th Cir. 2017). Equally the plaintiffs had the right to take jurisdictional discovery. *See e,g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978); *Fischer v. Magyar Allamvasutak Zrt*., 777 F.3d 847, 854 (7th Cir. 2015); *Sanderson v.*

*Spectrum Labs, Inc.*, 248 F.3d 1159 (7th Cir. 2000); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015); *Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).[1]

Judge Gettleman's pellucidly clear Order of the 13th left no doubt that while merits discovery was forbidden, jurisdictional discovery was not, and that plaintiffs could initiate limited discovery, which would include Mr. Benun's deposition. Thus, he granted "Plaintiff ... leave to take discovery limited to the issues raised in the motions to dismiss by 1/15/2018." Those included the defendants' claim that they had "no connection to Illinois that could form the basis for personal jurisdiction...." The Defendants claimed that all offices, facilities, employees, assets, and books and records are located in New Jersey, and that they do not maintain any websites or social media, and that "they have never conducted any business of any kind in Illinois." [Dkt. #73 at 1]. It bears repeating that much, if not all, of the factual conclusions were based on the Benun Certification.

It is allegedly undisputed that the New Jersey Defendants have distributed substantial quantities of the claimed infringing gray market Duracell batteries to Biglots! stores for sale to consumers through its numerous retail stores located in Illinois. It is also allegedly undisputed that the New Jersey Defendants sell the unauthorized goods to JRS Ventures, and potentially other customers, who have distributed them to consumers in the State of Illinois. Duracell insists that its document requests merely seek documents that show that the New Jersey Defendants placed the infringing gray market batteries into the stream of commerce, knowing that they would end up in

---

[1] So critical is the matter of jurisdiction that a Court of Appeals can remand the appeal to the district court so it can conduct jurisdictional discovery and address the matter in the first instance. *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 134 (3d Cir. 2017). *See also Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015).

3

Illinois.

In spite of what occurred at the hearing and Judge Gettleman's predictable Order, the defendants (including Mr. Benun) have refused to allow the Benun deposition to go forward and have refused to produce certain categories of documents, which the plaintiff insists bear upon the jurisdictional (and venue) question before Judge Gettleman.[2]

**FACTUAL BACKGROUND**

Duracell sued JRS Ventures in April 2017 for intentional and willful violation of the Lanham Act (15 U.S.C. §1114), for False Designation of Origin, (15 U.S.C. §1125(a)), and Unfair Competition (815 ILCS 505, *et seq.*) (Dkt. #1). In its interrogatory responses, JRS Ventures identified Milecrest Corporation (which allegedly is owned and controlled by Mr. Benun) as the source of the infringing gray market batteries. JRS Ventures also produced documents supposedly showing that it has distributed the accused goods to customers located in Illinois. Later, Duracell says it discovered that JNA Sales, Inc. a/k/a JNA, Inc. is another Benun owned/controlled company that is selling Duracell gray market batteries to BigLots! stores for sale throughout Illinois. (Phillips Decl. ¶¶ 3-4, Ex. A.) Thereafter, Duracell filed a Second Amended Complaint that added claims for direct and contributory infringement against the New Jersey Defendants, Milecrest, JNA and Benun. (Dkt. #57, 60).

On December 5th, the New Jersey Defendants filed a Motion to Dismiss the Second Amended Complaint on jurisdictional grounds. Alternatively they sought to have the case transferred to the District of New Jersey. (Dkt. #72). In support of their motion, the New Jersey Defendants submitted

---

[2] The defendants have asked that the case be transferred to New Jersey if the court finds it has personal jurisdiction over the defendants. [Dkt. #72 at 2].

a Certification signed by Morris Benun. It detailed his companies' alleged lack of direct business with the State of Illinois, and ended with this statement: "I declare under penalty of perjury that the foregoing is true and correct." (Dkt. #75).³ Mr. Benun said nothing in his Certification about his customers' business dealings in Illinois or knowledge of such business dealings or benefits, if any, he has received from such business dealings. Understandably Mr. Benun was subpoenaed by the defendants to give his deposition, but refused to appear. Despite the fact that the defendants attached and relied on Mr. Benun's Certification in their jurisdictional Motion to Dismiss, the New Jersey defendants filed a Motion for Protective Order seeking to quash the December 31st notice of deposition to Mr. Benun and otherwise prohibiting Duracell from deposing the New Jersey Defendants prior to a decision on their Motion to Dismiss. [Dkt. #89, 90]. Judge Gettleman sent the matter here. [Dkt. #94].

Yet, taking Mr. Benun's deposition was previously discussed at the December 13th hearing before Judge Gettleman. (Dkt. #88 at 3:3-5). He was told that Duracell wanted to take the Benun's deposition regarding the claim that defendants were not subject to the court's jurisdiction. When counsel for the New Jersey Defendants argued that a deposition was not warranted and sought to prescribe how jurisdictional discovery should proceed, the court rejected the limitations sought by the defendants, saying: *"I'm not going to tell him that he's not going to need a deposition."* (*Id*. at 4:9-11, 4:14-17)(Emphasis supplied). There followed this Order: "Plaintiff granted leave to take discovery limited to the issues raised in the motions to dismiss by 1/15/2018." [Dkt. #83].

---

³ The Benun Certification was no different than an Affidavit or Declaration. 28 U.S.C. §1746 equates the kind of certificate in this case with an affidavit or declaration. *See also Griffith Labs, Inc. v. Kancor Ingredients Ltd.*, at n.6, cited in Defendants' Memorandum in Opposition to Plaintiff's Motion to Compel Jurisdictional Discovery. [Dkt. #111, Ex. A].

On December 26, Duracell served its jurisdictional document requests on the New Jersey Defendants and requested the parties discuss scheduling Mr. Benun's deposition the week of January 8. On December 29, counsel for the New Jersey Defendants served their responses to the jurisdictional document requests, asserted objections – which the plaintiff characterizes as "meritless" – failed to produce any responsive documents, and indicated that they would not consent to a deposition of Mr. Benun. On December 31, counsel for Duracell responded, attaching the notice of Morris Benun's deposition and inviting a meet-and-confer regarding the New Jersey Defendants' refusal to produce any documents related to the court-ordered jurisdictional discovery.

A meeting between the lawyers was unavailing. The New Jersey Defendants filed a motion for a protective order, asking that the December 31 Deposition Notice of Mr. Benun be quashed and that he be excused from being deposed in connection with the jurisdictional motion. (Dkt. #91) (Although Mr. Benun was properly served with the notice of deposition, he had refused to attend). One would have thought that Judge Gettleman's prior Order did not exist, and that Mr. Benun did not attach his own Certification to his and the other defendant's motion to dismiss.

## ANALYSIS

**The Deposition of Morris Benun**:

We begin with the issue of the Benun deposition. Despite the proceedings on December 13th, Mr. Benun failed to appear for his noticed deposition on January 10. (Phillips Decl. ¶ 9, Ex. E.) The New Jersey Defendants filed a motion for what they called a protective order, asking the Court to quash the December 31 Deposition Notice and otherwise prohibit Duracell from deposing the New Jersey Defendants prior to a decision on their Motion to Dismiss. [Dkt. #91]. Yet, the taking of Mr. Benun's deposition was, as we have noted, raised at the December 13th hearing. (Dkt. #88 at 3:3-5).

("Duracell would like to seek the deposition of Mr. Benun in connection with their position that *they're* not subject to the Court's jurisdiction."].) When counsel for the New Jersey Defendants argued that a deposition was not warranted and that jurisdictional discovery "usually" only includes "some interrogatories and document requests," the Court responded "That's one way to get it going, is to start with your written discovery and then see if you need the deposition. But I'm not going to tell him that he's not going to need a deposition." (*Id*. at 4:9-11, 4:14-17).

Nonetheless, Mr. Benun refused to sit for a deposition, and the other New Jersey Defendants have said that his behavior was perfectly permissible. Quite apart from Judge Gettleman's pointed rejection of the defendants' attempted insulation of Mr. Benun, the argument for protecting Mr. Benun is unpersuasive. Indeed, it should come as no surprise that the plaintiff has expressed incredulity and annoyance in equal measure at the defendants' refusal to produce Benun for deposition. Of course, statements in affidavits, even from lawyers, are often incomplete, mistaken – or worse. Paper is patient, and when a declarant or affiant is ultimately deposed what emerges can vary considerably from the written statements. *See, e.g., Silversun Industries, Inc. v. PPG Industries, Inc.*, _F.Supp.3d_, 2017 WL 5127321 (N.D.Ill. 2017); *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 625 (N.D. Ill. 2016)*; FTC v. Advocate Health Care Network*, 162 F.Supp.3d 666, 671 (N.D. Ill. 2016); *Tellabs v. Fujitsu*, 283 F.R.D. 374, 378 (N.D.Ill. 2012); *Edwards v. Standard Fire Ins. Co.*, 2008 WL 1832366, at *2 (E.D. La. 2008)("After the Plaintiff was deposed, it appeared as if the affidavit submitted prior was false."). "Moreover, every judge is aware that many people who do not have a criminal record will lie ... when it is to their advantage." *Schmude v. Tricam Industries, Inc*., 556 F.3d 624, 628 (7th Cir. 2009).

This is not, of course, to say that Mr. Benun's statements are untrue or even imprecise. But, plaintiff is entitled to take discovery to test the truthfulness and accuracy of Mr. Benun's assertions. After all, is "the quest for truth" is the object of discovery and of trials. *Taylor v. Illinois*, 484 U.S. 400, 430 (1988). *See also Reid v. Silver*, 354 F.2d 600, 608 (7th Cir. 1965); *United States v. Meyer*, 398 F.2d 66, 71 (9th Cir. 1968); *Vnuk v. Berwick Hosp. Co.*, 2016 WL 907714, at *3 (M.D. Pa. 2016); *Duplan Corp. v. Deering Milliken, Inc.*, 370 F. Supp. 761, 767 (D.S.C. 1972). And the ability to examine witnesses plays a critically important a role "in the truth-seeking process," *United States v. Inadi*, 475 U.S. 387, 406 (1986), be it at trial or in discovery, by among things, helping to insure that a witness does not "exaggerate or color his version of an event."*Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 845 (7th Cir. 2011).

Thus, where a party injects an issue into a case, there can be no legitimate objection to the opponent being able to take appropriate discovery to ascertain the truth of the opponent's allegations. *Schlagenhauf v. Holder,* 379 U.S. 104 (1964); *Lorenz v. Valley Forge Insurance. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987); *GAB Bus. Servs., Inc. v. Syndicate,* 627, 809 F.2d 755, 762, n.11 (11th Cir. 1987). Indeed, the principle can even extend to situations where a party injects an issue into the case and then seeks to raise a claim of privilege. *See e.g., In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2nd Cir. 2000); *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006); *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008); 21 C. Wright & K. Graham, Federal Practice and Procedure § 5039 at 828 (2005).[4]

---

[4]At bottom, the evidentiary doctrine of "opening the door" has a similar (but not identical) justification and operation. As the Seventh Circuit has put it, "when a party puts evidence at issue, that party must 'accept the consequence[s]' of opening the door to that evidence."*Estate of Escobedo v. Martin*, 702 F.3d 388, 400–01 (7th Cir. 2012). A court may apply the doctrine in order to neutralize or cure any prejudice
continue...

Fairness also requires that Mr, Benun be deposed about his Certification and the matters raised in the Motion to dismiss. Discovery is not a game of "gotcha" – or at least should not be. *Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016). By requiring disclosure of relevant information and documents, the discovery provisions of the Federal Rules of Civil Procedure seek to avoid the surprise and secrecy that are antithetical to the informed determination of cases of their merits. *Cf., Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-13 (2002). *See also Sud-Chemie, Inc. v. CSP Technologies, Inc.,* 2006 WL 2246404 (S.D.Ind. 2006)(collecting cases). Nothing in the purposes underlying discovery in federal cases justifies or allows the defendants to prohibit Mr. Benun from being deposed about the matters he discussed in his Certification. *Marketran, LLC v. Brooklyn Water Enterprises, Inc.*, 2016 WL 8678547, at *2 (S.D. Fla. 2016); *Sjoblom v. Charter Commc'ns, LLC*, 2008 WL 4722040, at *2 (W.D.Wis. 2008).

Finally, there is the *ipse dixit* that taking a limited deposition of Mr. Benun is merely a "fishing expedition" that will yield nothing of value. But judges are not clairvoyant. *Beverly v. Abbott Labs.*, 817 F.3d 328, 336 (7th Cir. 2016). And neither are lawyers. *Pampered Chef, Ltd. v. Alexanian*, 2011 WL 6046896, at *22 (N.D. 2011). More importantly, "saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010). *Accord*,

---

[4]...continue
incurred from the introduction of evidence that would occur if it could not be challenged or amplified or explained. The doctrine is based in notions of fairness. *United States v. Martinez*, 988 F.2d 685, 702 (7th Cir. 1993); *Dennis v. Crews*, 2015 WL 7777274, at *18 (S.D. Fla. 2015). So too, the evidentiary doctrine of completeness. *Kovacs v. Hershey Co.*, 2006 W.L. 2781591 at * 9 (D. Colo. 2006).

Here Mr. Benun has made various allegations. Those against whom they are directed must be able to test his charges. Fairness demands no less.

9

*Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 679 (7th Cir. 2016). Perhaps in the end the defendants will turn out to have been right. Perhaps not. Only discovery will provide the answer.

In sum, Mr. Benun shall appear for his deposition at the time and place reasonably noticed by the plaintiff, who shall endeavor to schedule the deposition at a time convenient for Mr. Benun and counsel for the parties. Should the parties not be able to arrive at a mutually agreeable date, the court will be required to schedule the deposition.

Just as overboard and impermissible questioning, should it occur, will not be permitted, attempts to curtail otherwise proper questioning will not be allowed. The rules prescribing how depositions should proceed have been repeatedly discussed by the courts. *See generally Redwood v. Dobson*, 476 F.3d 462, 468 (7th Cir. 2007); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 902-904 (7th Cir. 1981); *LM Ins. Corp. v. ACEO, Inc*. 276 F.R.D. 592, 593 (N.D. Ill. 2011). They should be followed. This is not to say that anything untoward will occur. Still, it is often helpful in advance to set out the governing rules and principles and to make clear what the expectations of the court are.

**The Requests To Produce**

It is Duracell's contention that it only need show that the New Jersey Defendants placed the infringing gray market batteries into the stream of commerce with knowledge that they would end up in Illinois in order for the court in the Northern District of Illinois to exercise jurisdiction over the New Jersey Defendants. They defendants do not quite share the plaintiff's view of what is necessary to establish jurisdiction. The New Jersey Defendants either object to the jurisdictional document requests that they have received from the plaintiff or, according to the plaintiff, they have improperly limited their responses.

Of course, Judge Gettleman is the proper party to decide the legal question that is presently before him in the form of the Motion to Dismiss.

**Request 1**: Request 1 seeks "All documents the New Jersey Defendants reviewed or relied upon in preparing the Certification of Morris C. Benun (Dkt. #75)." Consistent with the underlying theme of their refusal to allow Mr. Benun to be deposed, the New Jersey Defendants claim that the request is cumulative, vague and ambiguous, and calls for the production of privileged material. If the party from whom the documents are requested objects to their production, that party has the burden to show why a discovery request is improper. *See* Rule 34(b); *Gile v. United Airlines, Inc.,* 95 F.3d 492, 495 (7th Cir.1996); *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 331, 337 (N.D.Ill.2005). That burden cannot be met by a reflexive invocation of "the same baseless, often abused litany" that the requested discovery is "vague, ambiguous, overly broad, unduly burdensome," or that it is "not reasonably calculated to lead to the discovery of admissible evidence." *Swift v. First USA Bank,* 1999 WL 1212561 (N.D.Ill.1999).

Despite courts' repeated admonitions that these sorts of "boilerplate" objections are ineffectual, *Joseph v. Harris Corp.,* 677 F.2d 985, 992 (3rd Cir.1983), and their uniform rejection by courts across the country, their use continues unabated, *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015), with the consequent institutional burdens, *cf., Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir.1987); *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir.1996), and the needless imposition of costs on the opposing party. They are "often the result of a local 'culture' of protectionist discovery responses, even though such responses are contrary to the decisions of every court to address them." *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 190 (N.D. Iowa 2017). Indeed, boilerplate objections are "known and detested

11

by courts and commentators—and receiving parties around the nation." *Wesley Corp. v. Zoom T.V. Prod., LLC*, 2018 WL 372700, at *4 (E.D. Mich. 2018).

They are "'tantamount to not making any objection at all.'" *E.E. O.C. v. Safeway Store, Inc.*, 2002 WL 31947153, *2–3 (N.D.Cal.2002). *See also In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994,* 172 F.R.D. 295 (N.D.Ill.1997) (rejecting generic, non-specific, boilerplate objections); *Klein v. AIG Trading Group Inc.,* 228 F.R.D. 418, 424 (D.Conn.2005)(overruling objections that "the familiar litany that the [requests] are burdensome, oppressive or overly broad"); *American Rock Salt Co., LLC v. Norfolk Southern Corp.,* 228 F.R.D. 426, 432 (W.D.N.Y. 2005) ("generalized objections that discovery requests are vague, overly broad, or unduly burdensome are not acceptable"). The plaintiff's request here is not vague and ambiguous as it clearly is directed to the specific documents that Mr. Benun relied on in drafting his Certification. Fairness and the consistent cases require that documents utilized by Mr. Benun must be produced.

Finally, it has been recognized that if a deponent or a trial witness uses a document to refresh recollection, even the claim of privilege will not protect against disclosure. *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc*. 2011 WL 5024221, 2 (S.D.N.Y.2011); *Beattie v. CenturyTel, Inc.*, 2009 WL 4646116, 1 (E.D.Mich.2009); *Napolitano v. Omaha Airport Authority*, 2009 WL 1393392, 4-5 (D.Neb.2009); *Bonner v. Normandy Park*, 2008 WL 444562, 2 (W.D.Wash. 2008). The analogy seems apt here. If Mr. Benun used documents to assist him in preparing his Certification, there can be no legitimate objection to their turnover in discovery.

**Request 13:** Request 13 seeks "All documents regarding any advertising of Duracell batteries by any customer of the New Jersey Defendants." The New Jersey Defendants object to this request, claiming, among other things, that the information is outside of appropriate inquiry

permitted by the December 13 Order. The argument is feckless and unpersuasive. Judge Gettleman's Order was not confining, nor was it intended to be. All that Judge Gettleman said was that the leave to take discovery was "limited to the issues raised in the motions to dismiss." While the parties have a different view of when jurisdiction is properly pled and shown, the matter is ultimately one that Judge Gettleman, not this court, will have to resolve. But, consistent with the plaintiffs understanding of jurisdiction, documents in the New Jersey Defendants' possession that relate to its customers' advertisement of Duracell batteries is legitimate because such documents could help establish the New Jersey Defendants' knowledge that the allegedly infringing batteries they are putting into the stream of commerce are being sold and/or directed to Illinois consumers. *See Asahi Metal Industry Co., Ltd.*, 480 U.S. at 117 ("As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.")(cited by the plaintiffs throughout their brief in support of their motion for production).

It is well to recall that for purposes of production, the concept of relevance in discovery is quite broad. Evidence may be relevant even though it is not itself admissible. It is enough if the evidence could lead to the discovery of admissible evidence. See Rule 26 (b), Fed. R. Civ. P. *Fogel v. Bukovic*, 2011 WL 1706213, at *6 (N.D. Ill. 2011). The evidence sought by the instant request satisfies the definition of relevancy under the Federal Rules of Civil Procedure.

**Request 15:** Request 15 seeks "All purchase orders, invoices, and bills of lading regarding Big Lots! or any other customer with stores in the State of Illinois." The New Jersey Defendants improperly object to this request as being outside the scope of the Court's December 13 Order. However, this request is relevant to jurisdiction because it is related to the volume of business done

with Big Lots! (which has numerous stores in Illinois), or any other customer with stores in Illinois. In addition, the New Jersey Defendants state that there are no documents "pertaining to the State of Illinois." The fact that the New Jersey Defendants do not have purchase orders, invoices, or bills of lading that they conclude "pertain to the State of Illinois" – whatever that may mean – is, for discovery purposes, not conclusive. We do not know the criteria used by the defendants when they determined whe3ther or not something "pertains" to Illinois.

Relevance for discovery purposes has a broad sweep. Because Big Lots! has regional distribution centers that distribute products to individual stores, the Plaintiff argues the purchase orders, invoices, and bills of lading regarding Big Lots! (or any other national or regional retailer with stores in Illinois for that matter) are relevant to jurisdiction as Plaintiff defines it under *World-Wide Volkswagen Corp.*, 444 U.S. at 297. Resolution of the jurisdictional question is, of course, a matter for Judge Gettleman. But at this juncture the Plaintiff is entitled to discovery to support its definition of an approach to jurisdiction.

**Request 16:** Request 16 seeks "All business plans of the New Jersey Defendants." The New Jersey Defendants, again, improperly object to this request as being outside the scope of the Court's December 13 Order, and improperly limit their response, stating that there are no documents "pertaining to the State of Illinois." It is not clear how the defendants have employed the word "pertaining"; they do not define it and that is not the word that the request seeks. The New Jersey Defendants' business plans are relevant to jurisdiction because they could evidence the New Jersey Defendants' intent of a national or regional plan, or could evidence the New Jersey Defendants' desire to expand their customer base to include specific national distributors or retailers (like BigLots!), which would in turn could lead to a finding that jurisdiction is proper in Illinois. The

14

business plans might also show that in fact the defendants had targeted Illinois for their products' distribution.

Of course, business plans like other information that could legitimately be deemed confidential could be turned over under an attorney's eyes only protective order. That would seem far preferable to denying discovery in its entirety.

**Requests 17-18:** Request 17 seeks "Documents sufficient to show any trade shows attended by the New Jersey Defendants." Request 18 seeks "All documents regarding the New Jersey Defendants' knowledge of JRS Ventures attending trade shows." The New Jersey Defendants object to these requests and limit their response, stating that there are no documents "*pertaining* to the State of Illinois." (Emphasis supplied). Again, the use of the word "pertaining" is the defendants', and one is left to guess at its meaning and how the defendants' intended to use it. That sort of equivocation and uncertainty will not do. Certainly, the Plaintiff, like any other litigant, is entitled to a good deal more than uncertainty in meaning.

The plaintiff insists that JRS Ventures attendance at trade shows would provide relevant information in that the defendant's knowledge of that attendance could well be significant as part of the chain of proof on which the Plaintiff would rely to show that JRS Ventures was aware that products would be sent into or find their way into Illinois. And that information, the plaintiff says, could form a link in the chain of proof that the plaintiff intends to offer against the defendants. The argument seems somewhat attenuated, but this after all is discovery and the information sought cannot at this stage be dismissed as not having the capacity to lead to possibly admissible evidence.

The plaintiff has said that, typically, trade shows are attended by businesses from around the nation, like the trade show in Las Vegas where Duracell first discovered the sale of the allegedly

15

infringing batteries by Milecrest customer and co-defendant JRS Ventures (a Missouri company that allegedly distributes batteries in Illinois). The New Jersey Defendants may, say the plaintiff, have met national distributors, or even local sellers who sell solely in Illinois, at these trade shows, regardless of whether the trade show itself occurred in Illinois. It is the plaintiff's claim that evidence of which trade shows the New Jersey Defendants attended could lead to a judicial finding that jurisdiction is proper because attendance at those trade shows could show that the New Jersey Defendants were communicating with sellers/distributors that direct their products to Illinois. That lease is the theory offered by the Plaintiffs. The ultimate definition of jurisdiction and whether what the defendants have done subjects them to jurisdiction in this court will be a matter for Judge Gettleman. But the discovery sought, cannot at this juncture be said to be out of bounds.

**Request 19:** Request 19 seeks "All documents regarding any communications between the New Jersey Defendants and any employee of Duracell or its predecessor Procter & Gamble." The New Jersey Defendants object to this request, claiming that the request is vague and ambiguous, overly broad, unduly burdensome, seeking information outside the scope of the Court's December 13 Order. As we have previously shown, this sort of boilerplate objection is essentially no objection at all.

But Duracell has acknowledged (quite properly) that this request could potentially seek information not related to jurisdiction in Illinois – which is improper – and thus has agreed to limit the request to communications between the New Jersey Defendants and any employee of Duracell or Procter & Gamble in Illinois. Communications with Duracell or Procter & Gamble employees located in Illinois are relevant to jurisdiction, as these communications would, according to the Plaintiffs, show a direct connection between the New Jersey Defendants and the State of Illinois. The

16

defendants must comply with the request, *but only as modified*.

**Request 21:** Request 21 seeks "All documents referring or relating to the subject matter of the New Jersey Defendants' email dated March 24, 2016 to JRS Ventures, specifically the statement 'with the change of ownership from P&G to Berkshire Hathaway, there has been a disruption in the flow of goods' and the statement 'you have to be looking at higher prices going forward.'" The New Jersey Defendants object to this request, claiming, among other things, that the information is outside the scope of the December 13 Order.

However, documents in the New Jersey Defendants' possession that relate to "the flow of goods" could help establish the New Jersey Defendants' knowledge that the infringing batteries they are putting into the stream of commerce are being sold and/or directed to Illinois consumers. That, at any rate, is their theory of how jurisdiction could be proper in Illinois. As we have said, the matter will ultimately be decided by Judge Gettleman. For now, discovery that will allow the plaintiff to substantiate its version of jurisdiction ought to be allowed unless there is some legitimate basis for objection. As to this request there is none. Again, it is well to note that the plaintiff relies *on Asahi Metal Industry Co., Ltd.*, 480 U.S. at 117 ("As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.").

**Requests 24-28:** Request 24 seeks "Documents sufficient to show the corporate organizational structure of the New Jersey Defendants." Request 26 seeks "All documents that refer to the relationship between JNA and Milecrest." Request 27 seeks "All documents that refer to the relationship between Benun and JNA." Request 28 seeks "All documents that refer to the relationship between Benun and Milecrest." The New Jersey Defendants object to these requests

claiming, that the information is outside the scope of the December 13 Order. The Plaintiff argues that the corporate organizational structure, as well as the relationship between the individual New Jersey Defendants, could provide information relating to how the New Jersey Defendants are related and whether the acts of one may be binding on the other.

The New Jersey Defendants have already admitted that Mr. Benun is the President and sole officer of JNA and Milecrest. It is the plaintiff's theory that documents evidencing even greater involvement between the parties (if there are any) could help establish that the New Jersey Defendants are an alter ego of one another, and in turn (since JNA has admitted it sells to national retailer Big Lots!) could lead to the court determining that it has jurisdiction over not only JNA, but also all New Jersey Defendants. That, at any rate, is the plaintiffs' theory, and it is entitled to take discovery to support that theory.

**Request 30:** Request 30 seeks "Documents sufficient to identify all of the New Jersey Defendants' customers of Duracell batteries." The claimed theory is that the identity of the New Jersey Defendants' customers is relevant to the jurisdictional question as this evidence could show that the New Jersey Defendants advertise, sell, or distribute infringing batteries in Illinois. Moreover, say the plaintiff, documents responsive to this request could also show that a New Jersey Defendant customer sells the infringing batteries in Illinois. The argument seems rather strained.

At this juncture, it is difficult at best, to see how knowledge of a customer in say Boise, Idaho or New Mexico or scores of other places would help to answer the jurisdictional question presently before Judge Gettleman. The objection to request 30 is granted, except that the defendants must provide the names of Illinois customers, if any, of its products and the names of any customers who the defendants know or believe ship ultimately into Illinois. The production may be for attorneys'

eyes only if that is deemed necessary.

The Motion of the plaintiff to Compel Jurisdictional Discovery [105] is granted consistent with this Opinion.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 2/5/18